**FLORIDA CITRUS COMMISSION, et al., Plaintiffs, and Ezra Taft Benson, Secretary of Agriculture, et al., Intervening Plaintiffs,**

v.

**UNITED STATES of America, Interstate Commerce Commission, et al., Defendants, and Atchison, Topeka and Santa Fe Railway Company, Armour and Company, et al., Intervening Defendants.**

Civ. No. 565.

United States District Court
N. D. Florida, Tallahassee Division.

Sept. 7, 1956.

---

3. See Note 2.

M. W. Wells and Joel R. Wells Jr., Maguire, Voorhis & Wells, Orlando, Fla., Lewis W. Petteway, Gen. Counsel, R. Y. Patterson, Jr., Asst. Gen. Counsel, Florida R. R. & Public Commission, Tallahassee, Fla., for plaintiffs.

Robert L. Farrington, Gen. Counsel, Paul E. Blanchard, Sp. Asst. to Gen. Counsel, Walter D. Matson, Atty., Office of Gen. Counsel, U. S. Dept. of Agriculture, Washington, D. C., for intervening plaintiffs.

Frank C. Brooks, Hugh T. Matthews, Jr., Callaway, Reed, Kidwell & Brooks, Dallas, Tex., M. W. Wells, Orlando, Fla., for Western Growers Assn.

M. W. Wells, Orlando, Fla., Karl D. Loos, Dickson R. Loos, Pope, Ballard & Loos, Washington, D. C., for California Citrus League.

G. Harrold Carswell, U. S. Atty., Tallahassee, Fla., Isaac K. Hay, C. H. Johns, Asst. Gen. Counsel, Washington, D. C., Willard R. Memler, Asst. Atty. Gen., John W. Henderson, Tallahassee, Fla., Harold B. Wahl, Jacksonville, Fla., Ausley & Ausley, D. F. McMullen, Tallahassee, Fla., for defendants United States and others.

Robert H. Bierma, Chicago, Ill., J. T. Clark, Cleveland, Ohio, Alfred S. Knowlton, New York City, Roland J. Lehman, Chicago, Ill., E. R. Leigh, Louisville, Ky., Ausley & Ausley, D. F. McMullen, Tallahassee, Fla., Harold B. Wahl, Jacksonville, Fla., John Ward Henderson, Tallahassee, Fla., for intervening defendants Atchison, T. & S. F. R. Co. and others.

Warren H. Wagner, Washington, D. C., Nuel D. Belnap, Chicago, Ill., D. Fred McMullen, Ausley & Ausley, Tallahassee, Fla., for defendants Armour & Co. and others.

Before JONES, Circuit Judge, BARKER, District Judge, and DE VANE, Chief Judge.

JONES, Circuit Judge.

The Interstate Commerce Commission entered its order dated January 9, 1956, on the petition of substantially all of the rail carriers of the country, permitting increases in refrigeration charges to the extent authorized in the Commission's report of the same date. 297 I.C.C. 505. This action is brought to enjoin, annul and set aside the Commission's order under the provisions of the Judicial Code, 28 U.S.C.A. §§ 1336, 1337, 1398, 2284, 2321, 2322 and 2325, and by the Administrative Procedure Act, 5 U.S.C.A. § 1009. The action was brought by shippers and representatives of shippers of fresh fruits and vegetables in and from Florida and two agencies of the State of Florida, the Florida Citrus Commission, a body corporate, Florida Statutes 1955, § 595.01 et seq.[1] and Florida Railroad and Public Utilities Commission, an unincorporated regulatory agency exercising quasi-judicial powers. Florida Statutes 1955, § 350.01 et seq. F.S.A. By intervention, Western Growers Association, a trade association of growers and shippers of melons and vegetables in and from Arizona and California, California Citrus League, a trade association of growers and shippers of citrus fruits in

1. Now F.S.A. § 601.04 et seq.

and from Arizona and California, and Ezra Taft Benson, Secretary of Agriculture, became parties plaintiff.

The charges made by rail carriers for refrigeration services are separate from the so-called line-haul rates. 49 U.S.C.A. § 6(1). The charges for refrigeration services are prescribed by the Interstate Commerce Commission or established by the rail lines. They are set forth in the published tariffs of W. T. Jamison, agent for the railroads. The refrigeration charges, for the most part, are of two basic groups, one known as Section 2 charges and the other being Section 4 charges. The designations come from the numbering of the sections of Agent Jamison's tariffs where the charges are scheduled. Generally speaking, Section 2 charges apply in the transportation by rail of fresh fruits, vegetables, melons, berries and processed foods. The commodities to which Section 4 charges are applicable include fresh meats and packing house products, fish, dairy products, bananas, coconuts and beer. Section 2 charges are based, or intended to be based, upon cost of ice in bunkers, supervision, switching to and from icing stations, damage to bunkers and cars, ice haulage in bunkers, accounting, hazard, taxes, and a return on investment. Section 4 charges are intended to include only cost of ice, salt and switching. Shippers using Section 4 services have urged that the carriers are compensated for the Section 2 costs not included in Section 4 charges in the line-haul rates on Section 4 commodities. A number of types of refrigeration services are available in order to provide for the different needs of shippers of various commodities from and to diverse points of origin and destination.

During the period of 1946 to 1951, inclusive, the Interstate Commerce Commission authorized increases in refrigeration charges aggregating 32.25 per cent. Ex Parte No. 162, Increased Railway Rates, Fares and Charges, 1946, 266 I.C.C. 537; Ex Parte No. 166, Increased Freight Rates, 1947, 270 I.C.C. 403. During the same period the Commission, in "general revenue" proceedings, authorized increases of interstate freight rates to the extent of 78.9 per cent. Ex Parte No. 162, Increased Railway Rates, Fares and Charges, 1946, supra; Ex Parte No. 166, Increased Freight Rates, 1947, supra; Ex Parte No. 168, Increased Freight Rates, 1948, 276 I.C.C. 9; Ex Parte No. 175, Increased Freight Rates, 1951, 281 I.C.C. 557. A recent order allows a further freight rate increase of 6 per cent. Ex Parte No. 196, Increased Freight Rates, 1956, —— I.C.C. ——. In Ex Parte No. 168, and again in Ex Parte No. 175, the Commission found the evidence inadequate to show that existing charges did not compensate the carriers for their costs in furnishing refrigerating services. In 1951 the rail carriers decided to conduct a survey to ascertain the costs of refrigeration services as a basis for determining whether an increase in charges could be justified. The method of making the survey and the results obtained from it need not be here recited beyond the extent required for our determination of the questions before us. They are fully detailed in the report of the Commission. The rail lines, basing their conclusion on a report of the survey, estimated that Section 2 refrigeration costs exceeded revenues by 29.8 per cent.

The rail carriers, by their petition filed with the Interstate Commerce Commission, sought increases of 30 per cent, with some exceptions, of the Section 2 charges, and specific increases for the charges for ice, salt and switching in the Section 4 charges. In their petition the carriers asserted that their cost studies showed that on the basis of 1951 figures, the cost of refrigeration services was more than $12,000,000 in excess of the revenues from such services. All of the interests before the Court were represented in the proceedings before the Commission. The Commission held numerous hearings at various places, built up a large record of testimony and exhibits, a report was proposed by the Examiner, exceptions to the proposed report were filed, briefs were submitted, and

oral argument was heard by the full Commission on three different days.

In its report the Commission found that the carriers were sustaining a deficit of 23 per cent of their refrigeration charge revenue from Section 2 traffic, and an ice cost of approximately 17 per cent in excess of revenue on Section 4 shipments. But, finding that a substantial portion of the affected traffic could not bear increases to the extent required to fully cover costs of service, the Commission authorized increases of 15 per cent in the basic refrigeration charges. Petitions for Reconsideration were filed with the Commission, and while these petitions were pending this suit was instituted. The Commission denied the Petitions for Reconsideration on April 16, 1956, and, this Court meanwhile having declined a stay, the increases became effective April 17, 1956.

At the outset we are met with the contention that no order was issued under Section 15(1) of the Interstate Commerce Act, 49 U.S.C.A. § 15(1), and that no notice was given under Section 4(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1003(a), which relates to rule making by administrative agencies. More nearly pertinent, we think, is Section 5(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1004(a), providing for notice of agency hearings. Wherever it appears that the absence of notice has resulted in prejudice to a complaining party the action of the administrative agency will be set aside. Pinkett v. United States, D.C.Md.1952, 105 F.Supp. 67. But no prejudice is shown where, as in this case, the party complaining had actual knowledge of and participated in the administrative proceedings and he will not be heard to complain of the failure to give formal notice. W. J. Dillner Transfer Co. v. United States, D.C.W.D. Pa.1951, 101 F.Supp. 506; C. E. Hall & Sons, Inc., v. United States, D.C.Mass. 1950, 88 F.Supp. 596. We think it doubtful that the hearings of the Commission in the proceeding we here consider were of the kind contemplated by the section of the Interstate Commerce Act requiring notice, but the absence of any showing of prejudice relieves us of the necessity to decide the point.

By the enactment of the Emergency Transportation Act, 1933, 48 Stat. 211, 49 U.S.C.A. § 15a(2), the Congress gave to the Interstate Commerce Commission the power and imposed the duty to adjust rates so that carriers as a whole, or in each of such rate groups or territories as the Commission might designate, will earn an aggregate net operating income equal to a fair return upon the aggregate value of the railway property of the carriers used in transportation service. Under the provisions of Section 13 of the Commerce Act, 49 U.S.C.A. § 13(1), "Any person, firm, corporation, company, or association, or any mercantile, agricultural, or manufacturing society or other organization, or any body politic or municipal organization," within which inclusive descriptions each plaintiff may find a designation, may petition the Commission and complain of anything done or omitted by any common carrier subject to the Act in contravention of the provisions of the Act. By Section 15, 49 U.S.C.A. § 15(1), the Commission is empowered, upon a complaint or on its own initiative, to determine whether any individual or joint rate, fare or charge is or will be unjust, unreasonable or unjustly discriminatory, and may determine and prescribe just and reasonable rates, fares and charges. Under Section 15a and the implementing provisions of the Act, the Commission has exercised jurisdiction in a number of proceedings which have been commonly called "general revenue" cases, where revision has been sought as to all or substantially all of the rates or charges on all traffic or on particular commodities or groups of commodities, either nationwide or in a large territory, in contradistinction to the "rate" cases, so called, in which the reasonableness of specific rates has been determined. Among the first, and perhaps the earliest of the court decisions dealing with a general revenue case, is the leading Algoma case. Algoma Coal & Coke Co. v. United States, D.C.E.D.Va.1935, 11 F.Supp. 487.

In the Algoma case, producers and shippers of coal sought the annulment of rate increases on that commodity, which increases had been made effective pursuant to an order of the Commission authorizing rate increases on a selective basis. Emergency Freight Charges, 1935, Ex Parte No. 115, in the Matter of Increases in Freight Rates and Charges, 1935, 208 I.C.C. 4. In a frequently cited and well reasoned opinion by District Judge Chestnut, it was held that the plaintiffs could not prevail. The suit was dismissed. The Court said:

"The plaintiffs have mistaken their remedy in the statutory scheme of railroad rate making. Their contention is that the Commission, without sufficient evidence or proper findings of fact, has determined or fixed particular rates for the plaintiffs' particular traffic. But this misconceives what the Commission has actually done. It was not dealing finally with particular rates for particular traffic, but permitting increased rates for selected commodities, by a general order affecting all the railroads in the country. If the increased rates as applied to the plaintiffs' particular situation can be shown to be unjust and unreasonable, their remedy is clearly by proceedings under sections 13 and 15 of the act (49 U.S.C.A. §§ 13, 15) for individual relief, and for reparation orders under section 16(1) of the act, 49 U.S.C.A. § 16(1). Brimstone R. & Canal Co. v. United States, 276 U.S. 104, 122, 48 S.Ct. 282, 72 L.Ed. 487; Alexander Sprunt & Son v. United States, 281 U.S. 249, 256, 50 S.Ct. 315, 74 L.Ed. 832; Eagle Cotton Oil Co. v. Southern Ry. Co., 5 Cir., 51 F.2d 443, certiorari denied 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571. Nothing in the Commission case debars them from such relief. Counsel for the railroad companies before the Commission and in this court proceeding concede that the rule of Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348, would not be available to defeat the plaintiffs' remedy in this respect before the Commission, upon a proper showing.

"It is necessarily inconsistent with the whole scheme of the Interstate Commerce Act, which requires uniformity and nondiscrimination as to rates, to permit particular shippers, to obtain individual relief in courts of different jurisdictions, with possible lack of uniformity in results, in matters committed to the administrative functions of the Commission, including the reasonableness of rates, until after the Commission has acted on the particular subject. Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075; Baltimore & O. R. Co. v. United States ex rel. Pitcairn Coal Co., 215 U.S. 481, 30 S.Ct. 164, 54 L.Ed. 292; Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477; 66 L.Ed. 943. Consistently therewith, it has been held by the Supreme Court in a number of cases, that individual shippers may not maintain suits to annul orders of the Commission unless they can show an invasion thereby of some independent legal right, whereby they particularly are subjected to injury. Alexander Sprunt & Son v. United States, 281 U.S. 249, 256, 50 S.Ct. 315, 74 L.Ed. 832; United States v. Merchants' & Manufacturers' Traffic Ass'n of Sacramento, 242 U.S. 178, 37 S.Ct. 24, 61 L.Ed. 233; Edward Hines Yellow Pine Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216." Algoma Coal & Coke Co. v. United States, 11 F.Supp. 487, 495.

The plaintiffs and intervening plaintiffs, other than the Secretary of Agriculture, assert that there is considerable doubt as to the correctness of the rulings in Algoma. They do not support their doubt with either a statement of a contravening principle or the citation of

any authority superseding it as a precedent. The Secretary of Agriculture, with commendable candor, says that the Algoma case is "still the law of the land on the subject". On a number of grounds it it urged that the case before us is not a general revenue case, but a rate case, and as such the charges authorized by it are unjust, unreasonable and discriminatory. It is further contended that even if it be decided that this is a general revenue case, there is no competent evidence of any need of additional revenue by the carriers. Unless the order is based upon a misconstruction of the Act or is unsupported by substantial evidence, it is entitled to a presumption of validity. 5 U.S.C.A. § 1009; Baltimore & Ohio Railroad Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209; Amarillo-Borger Express, Inc., v. United States, D.C.N.D.Tex.1956, 138 F.Supp. 411. It has been said by the Supreme Court, "Judicial review of the findings of fact and the expert judgments of the Interstate Commerce Commission where the Commission acts within its statutory authority is extremely limited." Interstate Commerce Commission v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 898, 91 L.Ed. 1102. See also Atchison, Topeka & Sante Fe Railway Co. v. United States, 232 U.S. 199, 34 S.Ct. 291, 58 L.Ed. 568; United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S.Ct. 931, 84 L.Ed. 1243; Ontario Freight Lines Corporation v. United States, D.C.N.J.1948, 76 F.Supp. 526. With these general guides we approach the questions so ably presented by contending counsel.

█ In the opinion in the Algoma case, supra, the Court observed that the order of the Commission there under review was permissive in character, that it prescribed no particular rates, that the lawfulness of individual proposals was not passed upon, and that it was open to the plaintiffs, under Sections 13 and 15 of the Act, 49 U.S.C.A. §§ 13, 15, to present to the Commission their contentions that particular rates initiated pursuant to its order were unreasonable and discriminatory. In Algoma it was also pointed out that the resulting rates fixed pursuant to the Commission's order would be subject to complaint and a determination of reasonableness, and that the Commission's order would not debar the right to reparations in a proper case. The plaintiffs contend that the Car Unloading Case, Secretary of Agriculture v. United States, 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015, is a controlling precedent for the position they take. There the Commission had entered an order approving maximum charges for the unloading by railroads of carload shipments of fruit and vegetables at the rail terminals in New York and Philadelphia. The Supreme Court, reversing the District Court of the Southern District of Florida, 114 F.Supp. 420, held that as a general rule line-haul rates included the making of the goods accessible to the consignee and that the Commission had failed to show a legal basis for departing from this general rule although a majority of the Court was of the opinion that the Commission had the power in a proper case to fix unloading charges separate from the line-haul rates. We do not have here any such factual situation as was presented in the Car Unloading Case. It is not disputed that refrigeration charges may be made separately from line-haul rates. In the case before us it is suggested that the line-haul rates on Section 4 traffic include some of the elements that are in the refrigeration charges applicable to Section 2 shipments, but it would not follow from this that we are dealing with a rate case rather than a general revenue case.

█ As in the Algoma case, the Commission's order is permissive, no particular charges are fixed, and the lawfulness of particular charges was not considered or decided. In its order the Commission said that:

"* * * to enable the petitioning carriers, under honest, economical, and efficient management, to provide adequate refrigeration service and specifically to meet increased costs of rendering that service, the basic refrigeration charges may be

increased as herein specified, and that the charges so increased will be just and reasonable for the future." 297 I.C.C. 554.

It omitted from its order any provision for modification in specific situations as was done in the order considered in King v. United States, 344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. 301. We are urged to say that this inclusion and this omission make the case one fixing rates rather than authorizing a general revenue increase. The Commission's power, whether to fix specific rates or charges or to authorize a general increase of rates or charges, does not, of course, extend to the fixing or authorizing of an unjust or unreasonable rate or charge, and putting the quoted words in their context in a general order, they mean no more than that the overall general increases as authorized will be just and reasonable. Such a finding does not preclude the making of applications to the Commission on any claim that a particular charge is unjust or unreasonable. Nor does the omission of a saving clause, such as was in the order considered in King v. United States, supra, preclude the making of such applications or alter the duty of the Commission to consider and decide such applications. The right to apply and the duty to decide have been given by the Congress in Sections 13 and 15 of the Act. The Commission has not, and indeed could not, foreclose the right or renounce the duty in an order authorizing general increases in transportation rates or charges. The Commission has said that its "sanction of a general adjustment does not carry with it the approval of any particular rate." Steel & Tube Co. v. Director General, 61 I.C.C. 526. This decision has had the approval of the Supreme Court in Brimstone Railroad & Canal Co. v. United States, 276 U.S. 104, 48 S.Ct. 282, 72 L.Ed. 487, and of the Court of Appeals for the Fifth Circuit in Eagle Cotton Co. v. Southern Railway Co., 51 F.2d 443. In its order the Commission suggested that:

"After the establishment of the increases herein authorized, the petitioners (rail carriers) should conduct thorough and comprehensive studies that will permit sound determinations as to the effect of increases upon the movement of traffic, and as to any inequities or improper relations that may have developed from changed conditions since their original establishment." 297 I.C.C. 554.

This language indicates a recognition by the Commission of its continuing duty to determine and prescribe just and reasonable individual rates and charges notwithstanding the entry by it of a general order authorizing increases.

■■ We see nothing to prevent this case from being governed by the same rules as are applied in general revenue cases by the styling of the proceeding before the Commission as "Proposed Increased Refrigeration Charges", rather than the "Ex Parte" designation usually given to such proceedings. No different principles are to be applied in this, a general revenue case where revenues are intended to be no more than compensatory, than in the general revenue cases involving line-haul rates where revenues are expected to include profits.

■ We come now to the contention of the plaintiffs that if we should hold this to be a case governed by the doctrines of the general revenue cases, and we do so hold, nevertheless the evidence does not show nor the findings support the Commission's conclusions or warrant the entry of its order. The evidence, for the most part, was obtained by means of the traffic study made on behalf of the carriers. In the making of the study, data were accumulated from a large number of icing stations under procedures designed to obtain a sample of approximately 10 per cent of shipments under standard refrigeration moving under Section 2 tariffs. The methods used in the study are recited at length and in detail in the Report of the Commission. They need not be set forth here. It is enough that we say that the evidence submitted was of a kind and quantity sufficient to permit a generalization upon

which findings could be based and conclusions drawn. The Supreme Court of the United States has approved basing findings on such evidence, saying:

"When an investigation involves shipments from and to many places under varying conditions, typical instances justify general findings. * * * To require specific evidence and separate adjudication in respect to each would be tantamount to denying the possibility of granting relief." Georgia Public Service Commission v. United States, 283 U.S. 765, 51 S.Ct. 619, 622, 75 L.Ed. 1397.

We are unpersuaded that the factors used in the study were not such as reflected existing conditions and, this being so, it is not a part of our function to review the determination based thereon. As said by the Supreme Court:

"It is not our province to enquire into the soundness of the Commission's reasoning, the wisdom of its decisions, or the consistency of its conclusion with those reached in similar cases." Georgia Public Service Commission v. United States, supra.

The Commission found a vast multitude of specific facts, it made an ultimate finding that the rail carriers were "sustaining a total deficit exceeding 23 per cent of the aggregate revenue accruing from the rendition of their refrigeration services". Because of the increasing diversion of this type of traffic from railroads to trucks, because of instances where increased charges would keep goods from shipment to markets, and other considerations, the Commission found "that an increase in the specified refrigeration charges in excess of 15 per cent is not justified by the indicated circumstances". The Commission concluded that to enable the carriers, "under honest, economical, and efficient management, to provide adequate refrigeration service and specifically to meet increased costs of rendering that service, the basic refrigeration charges may be increased as herein specified, and that the charges so increased will be just and reasonable for the fu-

ture". The findings are supported by substantial evidence and afford an adequate basis for the Commission's conclusions.

It is strongly insisted by the plaintiffs that the differences in the treatment accorded by the Commission's order with respect to Section 2 charges on the one hand and Section 4 charges on the other result in unlawful discrimination against and unjust treatment of the users of Section 2 services. It is true that Section 4 charges reflect only the cost of ice and salt, and the cost of switching, while Section 2 charges include also ice haulage, bunker damage, supervision and other elements. If there be any discrimination between Section 2 and Section 4 traffic, and this we do not decide, it is a discrimination which existed prior to the proceedings before the Commission whence issued the order under attack. Such discrimination, if any there be, did not result from nor was it substantially altered by the Commission's order. Whether there be an unjust discrimination is a question for the Commission. The Commission has found that the Section 2 charges and the Section 4 charges do not apply to like traffic and that no showing is made of any disadvantage or injury to Section 2 traffic or the shippers thereof. "In these circumstances", the Commission found, "any existing deficiency in the Section 4 charges does not relieve Section 2 traffic of the responsibility of bearing the full cost of that service and is not a consideration in the determination of the lawfulness of the increase proposed in the Section 2 charges". The finding is supported by the evidence. Differences in rates and charges as affecting different classes of non-competing shippers or consignees are not per se unjustly discriminatory. We find ourselves in accord with the Commission's position. See Board of Trade v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432, rehearing denied 315 U.S. 826, 62 S.Ct. 621, 86 L.Ed. 1222.

On the theory that we have under review a rate case rather than a revenue case, the plaintiffs assert they will have

no opportunity for redress from the discriminatory effects of the increases in the charges as applied to specific situations unless we set aside the Commission's order. But, it appears, the plaintiffs in this case as in Algoma Coal & Coke Co. v. United States, supra, and in Koppers Company v. United States, D.C. W.D.Pa.1955, 132 F.Supp. 159, 161, have mistaken their remedy. The situation in the latter case is so nearly parallel to that before us and the opinion of the Court so expressive of our views, we quote at some length from it. There it is said:

"Plaintiff's suit before this court seeks to have the court direct the Commission to grant the relief sought in plaintiff's petition for reconsideration initially filed before the Commission, which is to require the southern carriers to maintain the same rate on transportation of coal from the southern mines to Hampton Roads ports for subsequent transshipment by water, whether the ultimate destination is the plaintiff's plant at Seaboard, New Jersey, or its competitors located at New England ports.

\* \* \* \* \* \*

"The crucial issue, therefore, is whether this court may set aside and annul a permissive order entered by the Commission when plaintiff has failed to exhaust his remedy under Sections 13 and 15 of the Interstate Commerce Act, but has interceded as an intervenor for reconsideration and modification of the Commission's findings.

"In the case of a permissive order, the carrier is the only necessary party to the proceeding. The Commission represents the public. While it is proper and customary for shippers interested to participate in hearings, there exists no provision for notice to them. They are not bound by the order entered and the tariffs filed. If the rates made by tariffs filed under the authority granted seem to them unreasonable, or unjustly discriminatory, Sections 13 and 15 afford ample remedy. To permit shippers to seek redress for such grievances in the courts would invade and often nullify the administrative authority vested in the Commission. The attempt of the court to remove some alleged unjust discrimination might result in creating more. United States v. Merchants' & Manufacturers' Traffic Association, 1916, 242 U.S. 178, 37 S. Ct. 24, 61 L.Ed. 233.

"Sections 13 and 15 of the Act speak with clarity, and explicitly specify the procedure which complainants must pursue before the Commission in order to seek redress of grievances.

"The plaintiff has mistaken its remedy in the statutory scheme of railroad rate making. Its contention is that the Commission, without sufficient evidence or proper findings of fact, has determined or fixed particular rates for the plaintiff's particular traffic. But this misconceives what the Commission has actually done. It was not dealing finally with particular rates for particular traffic, but permitting increased rates for selected commodities, by a general order affecting all the railroads in the country.

"If the increased rates as applied to the plaintiff's particular situation can be shown to be unjust and unreasonable, its remedy is clearly by proceedings under Sections 13 and 15 of the Act for individual relief, and for reparation orders under the Act of Congress. 49 U.S.C.A. § 16 (1); Brimstone R. & Canal Co. v. United States, 1928, 276 U.S. 104, 48 S.Ct. 282, 72 L.Ed. 487; Alexander Sprunt & Son v. United States, 1930, 281 U.S. 249, 50 S.Ct. 315, 74 L.Ed. 832; Eagle Cotton Oil Co. v. Southern R. Co., 5 Cir., 51 F.2d 443, certiorari denied, 1931, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571; Algoma Coal & Coke Co. v. United States, D.C.E.D.Va.1935, 11 F.Supp. 487.

The plaintiff must proceed to exhaust its administrative remedies by challenging the rates filed by the railroads pursuant to the authorization granted it by the Commission in the ex parte proceeding.

\* \* \* \* \* \*

"It is not for this court to tinker with the delicate and fragile machinery of rate fixing and rate apportionment until the administrative process has been meticuously and stringently followed and exhausted in accordance with statutory requirement. The Commission must be afforded every available opportunity to utilize its vast reservoir of knowledge, experience, and know-how—in a proceeding wherein an unequivocal compliance with Sections 13 and 15 has been made with a complaint filed and defendant or defendants served, and clear-cut adversary contests evaluated and conclusively ruled upon, before the arm of the court should intercede upon the merits." Koppers Company v. United States, supra.

█ It has been settled that the Interstate Commerce Commission is without power to award reparations with respect to shipments which moved under rates approved or prescribed by it. Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348. Cf. Atlantic Coast Line Railroad Co. v. State of Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451. But this rule has no application under the permissive provisions of an order in a general revenue case such as is this case. Supported by substantial authority it was held in the Algoma case [11 F.Supp. 496], "If the increased rates as applied to the plaintiffs' particular situation can be shown to be unjust and unreasonable, their remedy is clearly by proceedings under sections 13 and 15 of the act (49 U.S.C.A. §§ 13, 15) for individual relief, and for reparation orders under section 16(1) of the act, 49 U.S.C.A. § 16(1). [Citing cases.] Nothing in the Commission case debars them from such relief."

This, we think, as expressed by the Secretary of Agriculture, is the law of the land, and it is applicable to the instant case.

Other questions are posed by plaintiffs. These have been considered and found to be without merit or inapplicable here. Adding to the length of this opinion by a discussion of them would not serve a useful purpose. For the reasons herein given the relief sought must be denied and the complaints must be dismissed. An appropriate order will be entered.

BARKER, J., concurs.

DE VANE, Chief Judge (concurring specially).

The legal line separating State of North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760, and similar cases on the one hand, and King v. United States, 344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. 301, and other like cases on the other hand is so thin it is sometimes difficult to follow. This is such a case.

I agree with my associates that this is a revenue case and not a rate case, and that the Commission had sufficient information before it to support an appropriate general order applicable in such cases—in fact, the evidence is insufficient to support any other kind of order.

I also agree with much said by Commissioner Clarke in his dissenting opinion, particularly with his statement that flat percentage increases in this case "results in increasing charges which are already equal to or above total costs, and overcharging certain commodities, or certain movements, or certain types of service in order that other movements or other types of service may be moved at a loss". The answer to this criticism, however, is ably made in Judge Jones' opinion, in which he points out that the variations in the rates prescribed for Section 2 commodities as compared with Section 4 commodities has been in effect for many years and is not the result of this case. All this case does is to increase the discrimination a little more.

528

The troublesome question to me in the case is the failure of the Commission's order to provide, as it has provided in other similar cases, see King v. United States, supra, that if the parties affected are entitled to relief insofar as any specific rates are concerned, they may take their cases to the Interstate Commerce Commission and there secure the relief to which they are entitled. That provision is to be found in most if not all prior general revenue orders heretofore entered by the Commission. It does not appear in this case. However, I agree with Judge Jones that the failure to incorporate it in the opinion or order in this case has no legal effect on the rights of the parties to be heard. If the Commission holds otherwise, then the case will have processed under administrative procedure to a point where the court will be in a position to deal with the issue. It is clear to me that this case has not been processed administratively to a point where the court may rule upon the lawfulness of the rates prescribed in this general order. Comp. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, at pages 50–51, 58 S.Ct. 459, 82 L.Ed. 638.