### ELECTRONIC INDUSTRIES ASSOCIATION, Plaintiffs,

v.

### UNITED STATES of America and Interstate Commerce Commission, Defendants,

### Aberdeen and Rockfish Railroad Company et al., Intervenors as Defendants.

### Civ. A. No. 1059–69.

United States District Court,
District of Columbia.

April 2, 1970.

---

Robert N. Kharasch, William J. Lippman, Samuel B. Nemirow and Graham W. McGowan, Washington, D. C., for plaintiffs.

Robert W. Ginnane, Arthur J. Cerra and Philip W. Getts, Washington, D. C., for defendants.

Edward A. Kaier, Richard J. Murphy, Philadelphia, Pa., James L. Tapley, Washington, D. C., Louis E. Torinus, Jr., St. Paul, Minn., and Paul F. McArdle, Washington, D. C., for intervenors as defendants.

Before WILBUR K. MILLER, Senior Circuit Judge, ROBB, Circuit Judge, and BRYANT, District Judge.

## OPINION

BRYANT, District Judge:

In a proceeding entitled "Ex Parte 259, Increased Freight Rates, 1968" the Interstate Commerce Commission made an order which permitted the Class I railroads of the United States to put into effect a general increase in their freight rates and charges to offset the increase in expenses which had occurred in 1967–68. Plaintiff, Electronic Industries Association, is the national organization of manufacturers of electronic products whose membership of some 300 companies ship more than 90% of such products made in the United States; and seeks to enjoin, annul, and set aside only that portion of the Commission's order permitting increased rates on the two items which include its products, i. e. #880 (Radio and Television Sets) and #1045 (Electronic Components or Accessories).

Plaintiff claims that the 7% increase over prior rates for those items is arbitrary, and in addition is based on an arbitrary selection of commodities to bear increased rates.

The Commission and the intervening railroads have moved to dismiss the actions under Rule 12(d) Fed.R.Civ.P., asserting that plaintiff has failed to state a claim upon which relief can be granted. Their position is that plaintiff has failed to exhaust its administrative

remedies under 49 U.S.C. §§ 13 and 15 which specifically provide a means for attacking the justness and reasonableness of rates as they apply to specific commodities.

We agree, and dismiss the complaint for the reasons which follow.

After the railroads presented their new rate schedule containing an overall projected increase in revenues of five percent, the Commission suspended all increases in excess of three percent on June 19, 1968 and ordered hearings and investigation. The investigation was divided into a number of parts, designated as "sub numbers." Sub-"No. 2" was concerned with "cost and revenue need;" there, the Commission found that the railroads did indeed have an increased revenue need, a finding not challenged by plaintiff in this proceeding. In addition, the Commission took testimony from both the railroads and shippers in the other ten "sub number" hearings, each concerned with the rate increase for a separate commodity grouping.

At Sub-"No. 11" plaintiff offered the testimony of two expert witnesses to show that the proposed increased rates applicable to members of its association bore no relationship to increased costs in shipping their products. In its final report the Commission rejected the relevance of this type of proof in determining the just and reasonableness of the railroad's proposed general revenue increase.[1]

There is no doubt that the Commission is correct that its action was in the nature of a general revenue proceeding. Atlantic City Electric Co. v. United States, 306 F.Supp. 338 (S.D.N.Y. 1969), Alabama Power Company v. United States, D.C.D.C., Civil Action

No. 2970–68 decided December 4, 1969. As the *Atlantic City* court pointed out:

'The Commission was concerned primarily with the "need, in the public interest, of adequate and efficient railway transportation service" and with the railroad's "need of revenues sufficient to enable the carriers, under honest, economical, and efficient management to provide such service." 49 U.S.C. § 15a(2). The increases in rates were general, even though the percentage increase varied from commodity to commodity. * * * It is true that the Commission found these general increases, on an overall basis, to be just and reasonable. But the Commission did not purport to pass upon individual rates as contrasted with the general level.' *Atlantic* at 341.

The plaintiff concedes that if the Commission in its discretion refused to suspend any rates, then under the time honored legal precedent of Algoma Coal & Coke Co. v. United States, 11 F.Supp. 487 (E.D.Va.1935), it would be required to make its attack first under §§ 13 and 15 of the Act.

With much emphasis, however, plaintiff argues that when the Commission exercised its discretion to suspend all increases in excess of three percent on June 19, 1968, it committed itself to holding hearings and making findings pursuant to § 15(7) of 49 U.S.C.; and these findings, according to plaintiff, are the proper subject for judicial review at this time.

This may or may not be so if the scope of that review is confined to the issue: did the railroads carry their burden as required by 49 U.S.C. § 15(7) in making out a case for a general rate increase on the basis of 15a(2) standards.[2] See Alabama Power Compa-

1. Interstate Commerce Commission Ex Parte No. 259 Increased Freight Rates, 1968 at pp. 716–17 (January 23, 1969).

2. 49 U.S.C. § 15a(2) provides: In the exercise of its power to prescribe just and reasonable rates the Commission shall give due consideration, among other factors, to the effect of rates on the movement of traffic by the carrier or carriers for which the rates are prescribed; to the need, in the public interest, of adequate and efficient railway transportation service at the lowest cost consistent with the

ny v. United States, supra. (dissenting opinion of Judge Wright). But this is not our case. Here there is no challenge to the Commission's findings of increased revenue need. On the contrary, the plaintiff's whole complaint boils down to an assertion that the increase in rates for shipping electrical products is discriminatorily high and without a rational cost basis.[3] Its claim is clearly a subject for §§ 13 and 15 of 49 U.S.C. Thus, plaintiff's attack here is premature; it must first exhaust its appropriate administrative remedies. The proper conclusion for this case was stated quite nicely in Algoma:

> The plaintiffs have mistaken their remedy in the statutory scheme of railroad rate making. Their contention is that the Commission, without sufficient evidence or proper findings of fact has determined or fixed particular rates for the plaintiffs' particular traffic. But this misconceives what the Commission has actually done. It was not dealing finally with particular rates for particular traffic, but permitting increased rates for selected commodities, by a general order affecting all the railroads in the country. If the increased rates as applied to the plaintiffs' particular situation can be shown to be unjust and unreasonable, their remedy is clearly by proceedings under sections 13 and 15 of the act (49 U.S.C.A. §§ 13, 15) for individual relief, and for reparation orders under section 16(1) of the act, 49 U.S.C.A. § 16(1). [11 F.Supp. 495–496]

Therefore, the motion of the Commission and Railroads is granted and the action is dismissed.

So ordered.

furnishing of such service; and to the need of revenues sufficient to enable the carriers, under honest, economical, and efficient managment to provide such service.

3. The testimony of the plaintiff's expert witnesses would appear to be quite relevant in a §§ 13 and 15 proceeding where the complaining shipper must sustain the burden of showing that a rate is unjust and unreasonable.