**4**

OKLAHOMA CORPORATION COM-
MISSION et al., Plaintiffs,

v.

UNITED STATES of America et al.,
Defendants.[1]

No. 73-C-163.

United States District Court,
N. D. Oklahoma.

Dec. 20, 1974.

1. The Interstate Commerce Commission intervened as a defendant, as did the affected railroads. The intervening defendant railroads are the Arkansas Western Railway Co.; The Atchison, Topeka and Santa Fe, Railway Co.; Beaver, Meade and Englewood Railroad Company; Chicago, Rock Island and Pacific Railroad Co.; Fort Smith and Van Buren Railway Co.; Hollis & Eastern Railroad Co.; The Kansas City Southern Railway Co.; Missouri-Kansas-Texas Railroad Co.; Missouri Pacific Railroad Co.; St. Louis-San Francisco Railway Co.; Sand Springs Railway Co.; Texas, Oklahoma & Eastern Railroad Co.; The Texas and Pacific Railway Co.; and Tulsa-Sapulpa Union Railway Co.

**6**

Stephen A. Collinson, Oklahoma City, Okl., Okl. Corp. Com'n, for plaintiff Oklahoma Corp. Com'n.

R. L. Davidson, Jr., and John E. Robertson, Tulsa, Okl. (Houston, Davidson, Jacoby, Main & Nelson, Tulsa, Okl., on the brief), for plaintiffs Liberty Glass Co., Kerr Glass Mfg. Corp., Bartlett-Collins Co., ASG Industries; Ball Corp. and Brockway Glass Co.

Richard H. Streeter, Atty., I. C. C. (Thomas E. Kauper, Asst. Atty. Gen., Fritz R. Kahn, Gen. Counsel, I. C. C., Nathan G. Graham, U. S. Atty., and John H. D. Wigger, Atty., Dept. of Justice, on the brief), for defendants United States and I. C. C.

Grey W. Satterfield, Oklahoma City, Okl., and Dickson M. Saunders, Tulsa Okl. (Donal L. Turkal, St. Louis, Mo., and William C. Anderson, of Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, Okl., and Franklin, Harmon & Satterfield, Oklahoma City, Okl., on the brief), for intervenors defendant Railroads.

Before HOLLOWAY, Circuit Judge, BARROW, Chief Judge of the Northern District of Oklahoma, and BOHANON, District Judge.

HOLLOWAY, Circuit Judge.

This action seeking review of an order of the Interstate Commerce Commission (the ICC) invokes the jurisdiction of this three-judge court in accord with 49 U.S.C.A. § 17(9); 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321–2325. The order sought to be reviewed is one of the ICC finding existing intrastate rates and charges in the State of Oklahoma to constitute an undue discrimination and undue burden on interstate commerce, and increasing the intrastate rates and charges to the level of interstate rates and charges pursuant to 49 U.S.C.A. § 13(4).

The suit was brought by the Oklahoma Corporation Commission and several companies which will be collectively referred to as the Oklahoma Glass Industry or the Glass Industry. The later group of plaintiffs are all shippers of silica sand, sometimes referred to as "industrial" sand, and were all parties to the proceedings before the ICC.

The ICC proceedings were initiated by the principal railroads serving Oklahoma, which are also intervening defendants in this suit. The proceedings were held before an Administrative Law Judge and subsequently an Examiner's Recommended Report and Order was issued by him. Exceptions to the report and order were taken by the plaintiffs as protestants and were denied by Review Board Number 4 of the ICC. Having denied petitions for reconsideration and a request for oral argument by the protestants, the ICC, by Division 2 acting as an Appellate Division, entered an order in April, 1973, which essentially adopted the report of the Examiner.

In May, 1973, this suit was filed and a temporary restraining order was granted. On June 13 a hearing was held before the three-judge court on the application for an interlocutory injunction and the defendants' motion to vacate the restraining order. After the intervening railroads filed undertakings to keep separate accounts of the funds derived from the higher rates and charges and to make refund if the increased rates

were determined to be unlawful, the court vacated the temporary restraining order and denied the application for an interlocutory injunction.

The plaintiffs allege in their amended complaint that the ICC order is invalid in sum because it is not supported by substantial evidence, is contrary to the evidence, and ignores competent, uncontradicted and unrebutted evidence; because there was no need for increased revenue shown by the defendant railroads; and because the increased rates will diminish rather than strengthen the viability of rail transportation by causing a loss of revenue through diversion to other modes of transportation. It is also alleged that the order will create an undue and unreasonable advantage, preference or prejudice between persons or locations in intrastate commerce and those in interstate commerce, and that the order is an invasion of the sovereign powers of the State of Oklahoma.

Additional grounds for relief are set forth in a supplemental amendment. It is based on a motion by the St. Louis-San Francisco Railway Co. (Frisco) to the ICC for authority to vary its rates to avoid diversion of traffic to motor carriers and the August 1, 1973, modification of the previous order by the ICC. It is alleged that granting of authority to the railroads to reduce rates is repugnant to the Interstate Commerce Act; is not founded on any evidence before the hearing officer or the ICC and is unsupported by substantial evidence; is an acknowledgment of the erroneousness of the findings by the administrative law judge; is an acknowledgment that the level of rates for the transportation of silica sand is not necessary to achieve compliance with the finding that, "The unlawfulness . . . found to exist should be removed by applying to the Oklahoma intrastate rates and charges the increases which are maintained by [the railroads] on like interstate traffic between points in Oklahoma and points in adjoining states, as authorized by

[previous proceedings] . . . ."; converts the general revenue order to a specific commodity order; is an unlawful invasion, interference with, and preemption of the inherent powers of the Oklahoma Corporation Commission; and is an unlawful delegation of authority to the carriers.

In their joint answer to the amended complaint, the United States and the ICC assert that the orders of the ICC are not reviewable because they are permissive in nature and do not approve the justness or reasonableness of any particular rate, and that the plaintiffs have failed to "exhaust administrative remedies under 49 U.S.C.A. §§ 13 and 15" by attacking the justness and reasonableness of the rates on the particular commodities named in the amended complaint, along with general denials. The same defenses are raised in the intervening railroads' answer.

On these issues the case was heard by this three-judge court in February, 1974, and we have considered a supplemental brief filed and the briefs, arguments and the administrative record offered. This opinion will constitute our findings and conclusions concerning the record before us.[2] The court concludes that the following issues merit discussion:

1) Whether the proceeding before the ICC was a general revenue proceeding and, if so, what effect that determination has upon consideration of other issues;

2) Whether the findings and order of the ICC are supported by substantial evidence; and

3) Whether the ICC's modification, on August 1, 1973, of the previous order was valid and whether the modification converted the original order from a general revenue order to a specific commodity order.

We will treat some related contentions in discussing these issues to which we now turn.

2. Cf. Nickol v. United States, 501 F.2d 1389, 1391–1392 (10th Cir.); Heber Valley Milk Company v. Butz, 503 F.2d 96, 97 (10th Cir.).

**8**

**1.** *Was the ICC proceeding a general revenue proceeding?*

As we have noted, the United States and the ICC and intervening railroads contend that plaintiffs have failed to exhaust their administrative remedies and that relief from individual rates, such as for silica sand and limestone, must first be sought by a proceeding for reparations before the ICC, pursuant to 49 U.S.C.A. §§ 13(1) and 15(1). The plaintiffs respond to this by saying that they have exhausted administrative remedies since they filed a petition and an amended petition with the ICC for modification of the order, and these petitions have now been rejected by the ICC. They further contend that because the order required the establishment of particular rates, rather than merely setting ones which were permissive, the rates are now final, in full force and effect and subject to review in this proceeding. They contend that they would be unable to obtain reparations in a separate proceeding because of the holding in Arizona Grocery Co. v. Atchison, T. & S. F. Ry Co., 284 U.S. 370, 52 S.Ct. 183, 76 L. Ed. 348, due to the fact that these rates have been approved as reasonable by the ICC.

■ The cases cited by plaintiffs do distinguish general revenue proceedings by stating that the rates set in such proceedings are permissive rather than prescribed.[3] And it is true that in our case the effect of the order was to require the carriers to bring intrastate rates up to interstate rate levels in effect. See Finding 5, Examiner's Report

and Order.[4] However, the use of mandatory language in such an order does not alter the fundamental nature of a general revenue proceeding pursuant to 49 U.S.C.A. § 13(4). See, e. g., King v. United States, 344 U.S. 254, 259, 275–276, 73 S.Ct. 259, 97 L.Ed. 301. Nor does it open to attack through court review the reasonableness of individual rates increased pursuant to the general revenue order. See United States v. Louisiana, 290 U.S. 70, 78–79, 54 S.Ct. 28, 78 L.Ed. 181; State of North Carolina v. ICC, 347 F.Supp. 103, 111–112 (E.D.N.C.), aff'd, 410 U.S. 919, 93 S.Ct. 1362, 35 L.Ed.2d 582; State Corporation Commission of Kansas v. United States, 216 F.Supp. 376, 384 (D.Kan.), aff'd, 375 U.S. 15, 84 S.Ct. 60, 11 L.Ed.2d 39.

■ In other findings adopted by the ICC, the Administrative Law Judge did address the reasonableness of rates. See Examiner's report pp. 15, 16. Also the order's provision preserving to parties the right to seek modification of individual rates is couched in somewhat more restrictive language than is often the case in such orders. See Examiner's report, 16; and see, e. g., Atlantic City Electric Co. v. United States, 306 F. Supp. 338, 340 (S.D.N.Y.), aff'd by an equally divided Court, 400 U.S. 73, 91 S.Ct. 259, 27 L.Ed.2d 212; but see Florida Citrus Commission v. United States, 144 F.Supp. 517, 524 (N.D.Fla.), aff'd 352 U.S. 1021, 77 S.Ct. 589, 1 L.Ed.2d 595. We do not feel, however, that the intent or effect of the order was to prescribe or fix reasonable rates within the meaning of Arizona Grocery Co. v. At-

---

3. See, e. g., National Small Shipments traffic Conference, Inc. v. United States, 321 F. Supp. 500, 505–506 (S.D.N.Y.); Alabama Power Co. v. United States, 316 F.Supp. 337, 338 (D.D.C.), aff'd by an equally divided Court, 400 U.S. 73, 91 S.Ct. 259, 27 L. Ed.2d 212; Florida Citrus Commission v. United States, 144 F.Supp. 517, 523 (N.D. Fla.), aff'd, 352 U.S. 1021, 77 S.Ct. 589, 1 L.Ed.2d 595; Algoma Coal & Coke Co. v. United States, 11 F.Supp. 487, 495 (E.D. Va.); cf., Electronic Industries Ass'n v. United States, 310 F.Supp. 1286 (D.D.C.), aff'd, 401 U.S. 967, 91 S.Ct. 1188, 28 L.Ed.2d 318;

Aberdeen & Rockfish R. Co. v. SCRAP, 409 U.S. 1207, 1213, 93 S.Ct. 1, 34 L.Ed.2d 21 (Opinion of the Chief Justice in chambers).

4. By the ICC order the carriers were ". . notified and required to establish . .", for intrastate traffic, rates and charges not to exceed rates found reasonable by the ICC for interstate traffic in several earlier orders. These orders in Ex parte Nos. 256, 262, 265 and 267 authorized several general interstate rate increases, and a selective increase was authorized for interstate movement of various commodities in Ex parte No. 259.

chison, T. & S. F. Ry. Co., 284 U.S. 370, 387, 52 S.Ct. 183, 76 L.Ed. 515.[5] The general findings of reasonableness seem appropriate, if not essential, for compliance with North Carolina v. United States, 325 U.S. 507, 516–520, 65 S.Ct. 1260, 89 L.Ed. 1760, in § 13(4) general revenue proceedings. See King v. United States, 344 U.S. 254, 270–275, 73 S.Ct. 259, 97 L.Ed. 301; Illinois Commerce Commission v. United States, 292 U.S. 474, 483–484, 54 S.Ct. 783, 78 L.Ed. 1371; Florida Citrus Commission v. United States, supra. Such general findings of reasonableness do not preclude an application to the ICC on a claim that a particular rate is unjust or unreasonable. Id. at 524, 54 S.Ct. 783.

■ We conclude, therefore, that this was a general revenue proceeding and that the plaintiffs may not challenge the reasonableness of rates on individual commodities in this suit seeking review of an order resulting from such a proceeding. King v. United States, 344 U.S. 254, 275, 73 S.Ct. 259, 97 L.Ed. 301; United States v. Louisiana, 290 U.S. 70, 75–77, 54 S.Ct. 28, 78 L.Ed. 181; State Corporation Commission of Kansas v. United States, 216 F.Supp. 376, 384 (D.Kan.), aff'd, 375 U.S. 15, 84 S.Ct. 60, 11 L.Ed.2d 39; State of North Carolina v. ICC, supra, 347 F.Supp. at 111. Such questions must first be presented to the ICC through the initiation of proceedings for individual relief and for reparations pursuant to 49 U.S.C.A. §§ 13(1), 15(1) and 16(1).[6] Kop-

pers Co. v. United States, 132 F.Supp. 159, 163 (W.D.Pa.); National Small Shipment Traffic Conference, Inc. v. United States, supra, 321 F.Supp. at 506; Atlantic City Electric Co. v. United States, supra, 306 F.Supp. at 342–343; Florida Citrus Commission v. United States, supra, 144 F.Supp. at 524–527. We feel this was not accomplished here by the petitions for reversal or modification of the ICC order, since the petitions merely argued the inadequacy of the general revenue proceeding record to support increased rates on silica sand and limestone. See Koppers Co. v. United States, supra, 132 F.Supp. at 161–163.[7]

■ However, although plaintiffs may not challenge individual rates, such as those for silica sand and limestone, they nevertheless may attack the sufficiency of evidence and findings to support the general revenue order. We feel we have jurisdiction to consider such an attack. See Algoma Coal & Coke Co. v. United States, 11 F.Supp. 487, 494–495 (E.D.Va.); Florida Citrus Commission v. United States, 144 F.Supp. 517, 524–527 (N.D.Fla.), aff'd, 352 U.S. 1021, 77 S.Ct. 589, 1 L.Ed.2d 595; SCRAP v. United States, 371 F.Supp. 1291, 1296 (D.D.C.), Probable jurisdiction noted 419 U.S. 822, 95 S.Ct. 38, 42 L.Ed.2d 46 (1974); see also North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760; but see Alabama Power Co. v. United States, 316 F.Supp. 337 (D.D.C.), and Atlantic City Elec-

---

5. In *Arizona Grocery* the Court stated that the first order there considered had "declared in terms that 96.5 cents [per hundred pounds for shipment of sugar from California to Phoenix, Arizona] was, and for the future would be, a reasonable rate." 284 U.S. at 381, 387, 52 S.Ct. at 185. This order had "ordered the establishment of a rate not exceeding that figure." Id. at 381–382, 52 S.Ct. at 183. The railroads promulgated a 96 cent rate and later voluntarily reduced it to 86.5 cents. Id. at 382, 52 S.Ct. 183.

6. The railroad carriers and the ICC both state that reparations procedures are available and are the proper remedy for the plaintiff shippers to pursue.

7. We note that the Commission declined to consider the petitions to reverse or modify, as successive petitions for reconsideration in the general revenue proceeding, not allowed by Rule 101 of the Commission's General Rules of Practice. We do not feel this was an abuse of discretion, see National Trailer Convoy, Inc. v. United States, 381 F.Supp. 878, 881, aff'd sub nom. Morgan Drive Away, Inc. v. United States, 416 U.S. 976, 94 S.Ct. 2377, 40 L.Ed.2d 755. Of course, the plaintiff companies cannot be denied consideration of petitions which are properly directed to a modification of individual rates, based on adequate proof for such relief, and our disposition is without prejudice to such proceedings.

tric Co. v. United States, 306 F.Supp. 338 (S.D.N.Y.), both affirmed by an equally divided Court, 400 U.S. 73, 91 S.Ct. 259, 27 L.Ed.2d 212. While the real concern here may be with rates on individual commodities, we feel the attacks made on the general revenue order are broad enough to challenge its validity as such. Therefore we turn now to the question of the sufficiency of the record to support the general revenue order.

2. *Whether the findings and order of the ICC are supported by substantial evidence.*

The plaintiffs contend that the findings and conclusions of the ICC are not supported by substantial evidence, are in disregard of competent, uncontradicted and unrebutted evidence, and that no increased revenue need on intrastate freight rates was shown by respondent railroads.

██ In order for the ICC to supplant a state-prescribed intrastate rate there must be clear findings, supported by evidence, of each element essential to the exercise of that power by the Commission. North Carolina v. United States, 325 U.S. 507, 511, 65 S.Ct. 1260, 89 L.Ed. 1760; see also Chicago, M., St. P. & P. R. Co. v. Illinois, 355 U.S. 300, 305–306, 78 S.Ct. 304, 2 L.Ed.2d 292. Those findings which are supported by substantial evidence must be affirmed. Florida v. United States, 292 U.S. 1, 12, 54 S.Ct. 603, 78 L.Ed. 1077; Arkansas Grain Company v. United States, 263 F. Supp. 480, 484 (E.D.Ark.), aff'd, 387 U. S. 573, 87 S.Ct. 2069, 18 L.Ed.2d 965; State Corp. Commission of Kansas v. United States, 216 F.Supp. 376, 384 (D. Kan.), aff'd., 375 U.S. 15, 84 S.Ct. 60, 11 L.Ed.2d 39. We conclude that here the findings are supported by the evidence and are sufficient to support the order.

██ The first significant finding by the ICC is that the transportation conditions incident to the intrastate transportation of commodities within Oklahoma are not more favorable than those incident to interstate transportation to, from, and through points in Oklahoma.

See King v. United States, supra, 344 U.S. at 264–265, 73 S.Ct. 259, 97 L.Ed. 301; Illinois Commerce Commission v. United States, 292 U.S. 474, 483–484, 54 S.Ct. 783, 78 L.Ed. 1371. Support for this finding is primarily found in the verified statements of two witnesses, R. S. Fuller of the St. Louis-San Francisco Railway Co. (Exhibit 2) and B. A. Miller of the Missouri-Kansas-Texas Railroad Co. (Exhibit 3). Both affiants stated that they were familiar with the relevant operations, described the procedures for handling traffic on interstate and intrastate shipments, asserted that there were essentially no differences in handling between the two, and affirmatively stated that operating conditions incident to intrastate traffic were no more favorable than those incident to interstate transportation to, from and through certain states, including Oklahoma. Thus the finding is amply supported.

The testimony of these two witnesses, in a conclusory fashion, also supported the findings of the railroads' need for an increase in revenue. In fact, Miller indicated that his employer-railroad was operating at a deficit (Tr. 72–73). The main support for the finding of a need for increased revenues, however, came from the testimony (Tr. 13), and verified statement (Exhibit 1) of Thomas J. Halpin, Assistant Director of the Western Railroad Association, Cost and Economics Division. See State Corp. Commission of Kansas v. United States, supra, 216 F.Supp. 376, 380–381 (D.Kan.), aff'd., 375 U.S. 15, 84 S.Ct. 60, 11 L.Ed. 2d 39. His testimony essentially assumed that the current rates of charges by the railroads were compensatory. His figures and proof were mainly directed towards showing that the current rates of return on investment and equity were not competitive in the current economic market. His figures showed that, for the railroads in question, increases in costs had greatly exceeded increases in revenues. Furthermore, he was able to show that, over the period 1960–1970, the railroads had actually shown a de-

crease in net operating income (See table 2 attached to Exhibit 1). In addition, he was able to testify that at least two of the railroads had been shown to have a deficit rate of return and that the previous increases in interstate rates on the same commodities have had the effect of increasing revenues.

Joseph Hyzny, Manager of Cost Development of the Chicago, Rock Island and Pacific Railroad Co. testified that his company had operated at a deficit income from 1967 through 1970. Further, by the end of 1970, the company had reached a $15,396,283 deficit in working capital and the stockholders had not received a dividend for 5 years. Similar evidence was introduced through the affidavit of John Taylor (Exhibit 7), who held the position of "Manager-Costs" of the Missouri-Kansas-Texas Railroad Company. His company had shown no rate of return on investment for the past 5 years and had a deficit in net operating income. He described the company's need for revenues to cover the costs of deferred maintenance and operating expenses.

William W. Knibb, Senior Cost Analyst of the Frisco, indicated that for his company the increased revenue over the past 5 years had not matched increased expenses. He testified that his company's rate of return on net investment for 1970 was 4.48%.

In assailing the findings and order of the ICC, the Glass Industry points mainly to parts of the record dealing with silica sand and limestone, and also to the size of the increases in revenue which the new rates will produce. We are not persuaded that the parts of the record relied on, or the record as a whole, show that the findings are not supported. While we have considered the data relating to individual commodities in the overall assessment made, as stated we cannot review individual commodity rates as such in this suit.

We are satisfied the proof was sufficient to support findings that the railroads, due to lack of revenues, were suffering an unjust discrimination and an undue burden on interstate commerce as a result of the unreasonably low intrastate rates and charges; that the interstate rates were reasonable; and that conditions favoring intrastate transportation as contrasted to interstate transportation of the same commodities within the State of Oklahoma did not exist. We conclude that the findings are supported by the evidence and are sufficient to sustain the order. Arkansas Public Service Commission v. United States, 147 F.Supp. 454, 464 (E.D.Ark.), aff'd, 355 U.S. 4, 78 S.Ct. 26, 2 L.Ed.2d 21.

3. *Whether the ICC's modification in August, 1973, of its previous order was valid and whether it converted the general revenue order into a specific commodity order.*

We turn now to plaintiffs' contentions with respect to the Frisco petition for authority to vary its rates, filed with the ICC after entry of the ICC order. The ICC rejected the petition but did, however, modify the order to permit

> reductions in individual rates and charges for intrastate transportation between points in Oklahoma, without further order or proceeding, provided that published reductions shall not become effective except upon 30 days notice to [the] Commission and to the general public (Notice to the Commission to be accompanied by justification for the proposed rates), and provided that no protest is received by the Commission on or before 12 days prior to the expiration of the 30-day notice date, unless otherwise ordered by the Commission.

It is claimed by plaintiffs that the granting of this authority to the railroads is not founded upon any evidence before the Administrative Law Judge or the ICC and is not supported by substantial evidence; that the granting of this authority to the carrier is unauthorized by the Interstate Commerce Act; and that such an order constitutes an unlawful delegation of authority to

the intervening defendant carriers, in disregard of the authority of the Oklahoma Corporation Commission. Plaintiffs also claim that the motion and modification acknowledge the error of the findings of the Hearing Examiner that the intrastate rates should be raised to the level of interstate rates on like commodities. Furthermore, it is claimed that the modification, "by its very nature converted the order from a general revenue order to a specific commodity order."

■ The Frisco petition stated, as its reason for seeking permission to vary the rates, that a lower tariff on motor carriers for silica sand had become effective in February, 1973. It was claimed that these lower rates would result in a diversion of traffic from rail carriers. This admission by the railroad, however, cannot be used to impeach the findings of the Administrative Law Judge since the motor carrier rates had not become effective at the date the findings were made. Furthermore, the petition was denied by the ICC and it therefore cannot be charged with accepting the petition's allegations. Finally, it was recognized by the railroads' witness at the hearings that some downward adjustment might be necessary to meet the competition, and this possibility was acknowledged in the report of the Administrative Law Judge.

■ We are also unpersuaded by the claim that the ICC was without power to issue the modification allowing the railroads to reduce rates. In considering the authority of the ICC to enter the state field and to change a scale of intrastate rates in the interest of the carrier's revenue, the question is one of the relation of rates to income; and the raising of rates may in particular localities reduce revenue by discouraging patronage. See Florida v. United States, 282 U.S. 194, 214, 51 S.Ct. 119, 75 L.Ed. 291. It follows that it is reasonably within the power of the ICC in dealing with intrastate rates to allow a flexibility that would prevent the carriers from suffering such loss in revenues. Fur-

thermore, the Act itself authorizes the setting by the ICC of intrastate rates in terms of a maximum or minimum, or both. See 49 U.S.C.A. § 13(4). In allowing the carrier to reduce rates below those previously authorized the Commission delegates no more authority than when it prescribes a maximum lawful rate for the carriers. Thus the argument that the order made an unlawful delegation of authority to the carriers is without merit.

■ The constitutional power of Congress to legislate and of the Commission to regulate in the area of intrastate rates where appropriate to remove unjust discrimination against and undue burdens on interstate commerce is well settled. Florida v. United States, 282 U.S. 194, 210–211, 51 S.Ct. 119, 75 L.Ed. 291; State of North Carolina v. ICC, 347 F.Supp. 103, 109 (E.D.N.C.), aff'd, 410 U.S. 919, 93 S.Ct. 1362, 35 L.Ed.2d 582. We think the power of the ICC to raise intrastate rates in appropriate cases, while at the same time leaving it open to the railroads, as to individual rates, to meet competition from other modes of transportation is equally clear as a necessary corollary to the general power. We therefore conclude that the modification of August 1, 1973, did not constitute an unconstitutional or unlawful invasion of the powers of the State of Oklahoma.

■ Nor are we persuaded that the modification converted the general revenue order to a specific commodity order. There is nothing in the order that is directed to or purports to consider the reasonableness of any individual rate. Instead, it seeks to further the purposes of the revenue order by leaving it open to the railroads to avoid loss of revenue through the diversion of traffic.

We have considered the additional arguments made against the orders and find them without merit. It is not the function of this court to weigh the evidence submitted to the Administrative Law Judge, which amply supports the orders of the ICC. And it is well-settled

that such exercise of power by Congress and the Commission is not an unconstitutional invasion of state sovereignty.

For these reasons we conclude that the orders of the Commission should be sustained and this action should be dismissed, without prejudice to further proceedings for reparations, modification of rates or otherwise, as may be available.